God, our northern light, time and place, earth and heaven open unto thee. May it please the Court. I would like to begin by highlighting Mr. Lechner's unconstitutional convictions for improper storage under Counts 3 and 9. And I'd like to make three points in relation to those convictions. First, the regulations here that formed the basis for his convictions were never read to the jury. The jury cannot apply the law to the facts at hand without being provided a statement of the law from the court. But the parties had an expert witness who testified about that. It's kind of unusual, but isn't that acceptable if there's no objection? No, Your Honor, it is not. This court has rejected the notion that an expert can testify and instruct the jury on the law, even where the expert has been subjected to cross-examination by the other side as to the theory of the regulations. That's the Zipkin case cited in our briefing. Even though an expert can testify to an ultimate issue, a fact to be cited by the jury, it cannot testify to the law, and that error is compounded here where the court did not issue any instruction as to the content of the underlying regulations. Counsel, I think there's a lot of force to that argument, but it seems to be a classic example of where plain error would apply if there was no objection. Was there no objection? There was no objection, Your Honor. So if all of this is true, all you have to do is tell the district court, and the district court can then do it. But if you smile and go along, and it looks all right, then you've forfeited it, haven't you? No, Your Honor. Why not? So, two points. First, there's no waiver because there was no intentional relinquishment of the right. But we are analyzing under— to the jury, and if you say this is an illegal way to present those violations to the jury, then the judge could fix it. That's the plain error. That's the core of plain error to me is when you're not objecting to something that the judge could easily fix. If you just told him you didn't like it. I agree, Your Honor, and I think— So we're just sort of, I don't know, sandbagging district courts when we do stuff like that, isn't it? Say, oh, you did it wrong even though no one asked you to do it. Well, I think plain error is here to provide an opportunity for where substantial rights have been affected and the error is plain, the district court is corrected. And I think in this particular instance where the court abdicated its role of instructing the jury on the law, that's a particularly egregious plain error. And in terms of the harmless error component— When you say it's particularly egregious, I mean, it's— that the law is instructed from the judge as opposed to the counsel who are interviewing the witnesses who say this is what—and the other side can object. I mean, maybe that isn't the way it's supposed to be done, but it's not some kind of gross violation of a person's fairness. I would submit it violates both due process and the right to a jury trial because the government is not truly put to its proof of convincing a jury by reasonable doubt. If the jury is not instructed on the law to be applied to the facts— What's your best case in support of your position that there's a constitutional violation here where no objection is raised? Where there's a constitutional violation? I thought that's what you were saying, it's a constitutional— Yes, I think on constitutional violations, I'll come back to that in reply. I can give you a few cases that focus more on the jury instructions issue and that is the Zipkin case and Ames v. Dine as well as the Bamerlin v. Navistar case. I think to speak to Judge Rogers' point about harmlessness, there is a protection for this court serving as a sandbagger on the district court where an element is inherently not contested in the district court. But in this case, whether the storage regulations were complied with was contested and there's record evidence on that. And so the harmless error test asks whether this court can determine beyond a reasonable doubt that the jury's verdict would have been the same but for the omission of an instruction. And that test cannot be met here. I would also submit that under this court's Nelson case, that an omission of an element of an instruction is plain error as a structural matter. The government cites the Nieder case as determining that omission of an element can be subject to harmless error review. But where the error is structural, that is not the case. And in this particular instance, the court provided no instruction on the law with respect to the regulations. So there's no way to determine what the jury actually applied to the facts, and that's different from simply omitting a single element of an offense. I'd like to now turn to Mr. Lechner's conviction under Count 4 for possession of explosives while under indictment. And I'd like to focus on the jury instruction there as well. First, as we highlighted in our briefs, the Supreme Court requires a presumption against a strict liability offense. And the government has provided no evidence that Congress intended to omit a mens rea element for this particular offense. Is there any doubt that Lechner knew that he was indicted? Didn't he concede it? He, in after the fact, made a statement in his testimony that he guessed he was indicted. But that retrospective analysis isn't the same as him testifying, I knew I was indicted at the time. And his testimony indicates confusion about what was going on in the state court proceedings. At one point, he refers to being in prison for contempt at the same time that this was going on. And so he maintained that he did not know that he was under indictment. And the government was Would you agree that if he did know that this claim doesn't carry any water? If he did know, then there is a harmless error problem on the jury instruction issue, I would agree. I think that that would then raise the impossibility claim that it is an inherent due process problem for That also would go away if he knew. No, it would not if he knew because that would not It's not impossible if you knew, then you just don't carry a weapon because you know that you're You've been indicted. You know that you're an unqualified possessor. I would submit that it is unconstitutional because from the moment the indictment issues, which can be silent, which you cannot know about But if he did know about it, then it's not a problem. You say, well, this might be unconstitutional in a different situation, even though in this situation, that's not a problem. And so, therefore, in this situation, he doesn't get convicted. That doesn't really follow, does it? I would disagree. I think that that is picking up on a reason why a felon in possession of a firearm or someone who is barred from possessing explosives due to a conviction would not be able to argue lack of compliance because there is a notice period during which you can conform your conduct to the law. But where If you have the notice, then it isn't hurting you. The allegedly unconstitutional aspect just isn't hurting you, right? In the indictment context, I would submit because there is wholly passive conduct on the part of the person being indicted that it's completely out of their hands that that is a different scenario and violates the core It's not out of their hands if they know they're indicted when the possession occurs. Is it? If they know that they're indicted when the possession occurs, that it is not out of their hands at that time. So that's the case we have here, if you assume that he knew, which is what I asked you to assume a minute ago. Earlier in the period during which the government charged him with being under indictment, he may not have known at some point earlier then. Assuming that he knew, then the issue goes away. If he had an opportunity in that period to cure, then the issue could go away. Didn't he come into court and there was some reference in here that he was bound over? What is that or is that some other offense that we're not talking about? That is the set of facts here. At record page number 1568, Mr. Lechner testified that he disagreed that he was bound over. And at page ID 1634, he testified about these proceedings being about contempt. So I think that he would disagree on this record that he understood that he was under indictment. Well, had a charge already been leveled by a grand jury or was it a state procedure? An indictment had been issued by a state grand jury. Then he came before the state judge and knew that was the charge, whatever it was. That's disputed on the record. Mr. Lechner disputed that that's what he understood. You mean he didn't understand what he was doing in court? He just was there and the judge was nice to him and he went out the doors? I don't understand why he was there if he didn't know that he was under an indictment. That's why you bring people into court, right? The record's unclear on when he knew he was under indictment, when that happened. But he knew he was bound over. Isn't that your problem is that he goes under indictment and that he is, in fact, bound over? And he said, well, he disagreed that he was bound over, but then he conceded, I guess I was. And if you attend a state hearing under indictment and you are bound over, then the indictment continues. I'm struggling with how I guess I was doesn't concede your point. I would submit that he is looking back at it after the fact and maintaining maybe he didn't know at the time. But that's a problematic standard, wouldn't you agree? So anyone who goes before a court and is bound over, they get to say, I didn't understand that I was under indictment. Don't we need an objective standard? I agree that it's a difficult test to meet. I would cite to a recent case from this court, United States v. Houston, 2015, U.S. App, Lexis 11810, just for the principle that if an issue is contested, then the instruction is not harmless. But whether there is enough evidence here to contest the issue, I submit that there is. But I appreciate that it's a difficult standard to meet. If I may, I'd like to move on to Mr. Lechner's convictions for transportation of explosive materials without a license. His convictions under counts one and six. And I'd like to begin with the entrapment by estoppel argument. This argument should be reviewed by this court de novo, because Mr. Lechner repeatedly argued before the court that he did not break the law and that what he did complied with the regulations. But those regulations were never read to the jury, and nor was any instruction on the defense given. The Supreme Court decision in U.S. v. Pennsylvania Industrial Corporation, which is cited in our briefs, How was he estopped? How was the government estopped from? He was affirmatively misled by the regulations that permit someone who lawfully possesses explosives to move them in order to clean out the magazine. If we don't read the regulation to do that, then that eliminates that argument. Is that correct? If you do not read the regulation to permit his conduct, then yes. I don't read it that way. Can you explain how it says that? It's a storage regulation, right? It's a storage regulation, but it is . . . Storage regulation with an exception, and then you have another regulation which says you can't do what the exception provides for. I don't see how that's . . . First, the . . . Unless means that this particular regulation might not apply in a circumstance. It doesn't mean and anything after the unless clause is allowed. First, the regulation I would point out states that it is titled movement of explosives, and that's what Mr. Lechner was doing here, so it would be . . . Right, but it's entitled movement, but the first sentence is explosive materials must be kept in locked magazines unless . . . Unless they are . . . So the movement is the unless for where they must be kept. So if you read this regulation, it's a limited limitation on where materials must be kept and which materials must be kept. So it says these materials must be kept locked up, but we don't include this, so it's only these materials that must be kept locked up. That's all it says. It doesn't say, and for any other regulation purposes, you can do this thing that's in the unless clause. I just don't see how you can read it that way. I have two responses, Your Honor, if I may. The first is that the Pennsylvania Industrial Corporation case that I cited addresses whether conflicting regulations clear up the confusion. If there's some other regulation on the subject, if that satisfies . . . I'm asking. That doesn't respond to my question because I'm not seeing how they conflict. It seems to be perfectly consistent. So do you have precedents which say that anything after an unless clause allows what the unless is? No, but I would submit that a layperson who's looking for information about the law on moving their explosives were to read that regulation, and it says . . . Might be able to read a regulation in a way that it doesn't really require because it isn't beautifully drafted isn't enough to stop some statute. I don't think it's simply a lack of beautiful drafting. It clearly states that unless these explosives are being transported to a place of storage by a person who has lawfully acquired explosives materials, then they have to be kept locked. I think the very clear implication of that is that that person can move the explosives and that a layperson reading them would interpret it that way. Let me give you a hypothetical I came up with. What if you have a regulation which says for this specified vehicle, you may not use this particular emergency brake unless you are driving over 50 miles an hour? Then there's another provision which says never drive this vehicle over 50 miles an hour. You would say someone would read that as I can drive it over 50 miles an hour because there's a brake that can't be used unless you're over 50? It just doesn't make sense. Your Honor, I would point to that as a problem of conflict, not of the one regulation not necessarily being permitted, cannot be interpreted as the way that another one can. I don't see how that's in my example. That's not in conflict. One of them is a limitation on when to use the brake, and the other is a limitation on how fast you can go. If the allegation is you're going too fast, you don't look at the other regulation that talks about when you're using the brake. Or to speak about this case, if you're talking about storage as opposed to transportation, you would look in the transportation provision to talk about when you can transport and look in the storage provision to see how you store. My response to that, Your Honor, is the criminal principle of lenity that you construe statutes in criminal defendants' favor and that you would maybe look at those regulations differently than regulations that lead to criminal liability. Don't you have a factual problem with the taped statement by your client that he didn't know what you couldn't comply with any of the regulations, or I don't know what they say anyway, mixed with some profanity? I mean, doesn't the factual record bite you? Your Honor, there's certainly facts that the government could use, but the harmless error standard is not whether the defendant has proved its case on the record. It's whether there's a question for the jury. And Mr. Lechner testified in those remarks that he was just joking in his trial testimony, and he'd been working with expulsives for a long time, so there's certainly evidence in this record suggesting a conflict on this element, on this issue, and that does not satisfy the harmless error standard. Thank you. I see I've used my time. Thank you. Good morning, Your Honors. Jennifer McManus on behalf of the United States. This court should affirm John Lechner's convictions because his prosecution was not unfair and it did not violate any of his constitutional rights. I'll just maybe touch on the arguments just made by my opponents in answering questions that the court has. On the entrapment by estoppel claim, that claim fails because Mr. Lechner has to show that he was actually relying on storage regulations, and as Judge Stranch has pointed out, there is record evidence to show that he was not, in fact, relying on that storage regulation or on any other. On the possession while under indictment count, I wanted to just clarify the chronology on that in case the court has any concerns about that. Charges were brought in July of 2011. There was a preliminary examination in August of 2011, which there was testimony from Mr. Lechner himself and from the prosecuting attorney that Mr. Lechner attended, and he was, in fact, found over for trial. The interview that took place with the federal agents took place on September 8, 2011, and that did take place at the Chippewa County Jail because Mr. Lechner was in jail at that time for a contempt charge that was unrelated to these other charges. So that arose out of a proceeding in front of a probate court judge, and so that's why he was in jail at that time, at the time the interview took place. Did it come before a judge, or did somebody just read him something in the jail? He went before a judge on the charges. There were two separate informations, and he went in front of a judge. There were information. In August, yeah. There were information. You don't have grand juries in Michigan. Right. So it was an information. Is that the same as an indictment? Yes. Yes, there is. Actually, it's in the definitions of indictment in the statute and the regulations, and it is the same thing, and he was arraigned on that charge in August of 2011, and that's when he was bound over. Okay. When you say bound over, that usually refers to something before an indictment is returned, but that's what got me confused. Being bound over is when you come before a magistrate judge or something, and they'll say, well, bind you over to the grand jury, but you don't have a grand jury, so I don't understand that bind over term. Yeah, he was bound over for trial at that August 2011 proceeding. He was in front of a judge. Trial was set. Trial was set. Even at the time of Mr. Luckner's federal trial, those charges were still standing, and he would have been tried, but the charges were dropped eventually. Then I'd like to just talk about the improper storage counts briefly. The expert did testify without objection as to the requirements. There was a jointly submitted jury instruction on that. It should be reviewed for plain error, and Mr. Luckner cannot satisfy that plain error standard because not only did the jury hear the unobjected to testimony of the expert as to what the requirements were, and not just the ultimate conclusion that they were violated, but what the requirements were, but the jury was shown photos right alongside the expert who was testifying. Those requirements were set out, for example, that there has to be locks on your magazines. That's set forth in Storage Instruction 555.206. The expert testified there must be locks. The jury was shown photos where there were no locks. Sometimes there were no doors. We submitted to the court a CD that has some of those pictures, even a cursory examination of those pictures, would demonstrate that there is no reasonable probability of a different outcome, even if the jury had had the text of the regulations in front of it in the context of the instructions. And I would suggest that there may have been good reasons why defense counsel did not request that here. If the text of the regulations were put before the jury, not only would it be a very long set of instructions, but it would be abundantly clear that Mr. Lechner was in violation of numerous of those storage regulations. I would be happy to take any other questions from the court. There were a lot of issues raised here. No, thank you. Thank you. Ms. Dooley? Your Honor, to address the point that was just made about the storage regulations, there were errors in the way that the expert instructed the jury on the law. So in spite of simply violating this court's precedent on the proper role of the expert, the expert, in fact, gave inaccurate instructions. For example, the expert commented that a storage unit for explosives has to be completely free of anything but explosives, but the regulations provide that cleaning supplies and the like may be kept with explosives. So that was also simply an inaccurate statement. Were there cleaning supplies as part of the evidence that were in storage for this, or was that just a throwaway? I believe buckets, cord, things like that that might be cleaning supplies or maintenance supplies within the context of an explosives operation were found in some of these. Did anybody argue about that, say, well, he's not supposed to have explosives with buckets in it or anything like that, or was that just not discussed at all? The defense counsel did cross-examine the expert and elicit that there are housekeeping regulations. The jury was not instructed on that, but Mr. Lechner did contest that he failed to comply with that regulation on those grounds. I would like to also address the material false statement conviction that I did not address in my opening. This court requires some evidence of materiality. The cases that are in the briefs- Was addressed in her response? Oh, no, it was not. She did not address it. We'll rely on the briefs for that. Thank you very much, Your Honor. If there are no further questions, I'll see my time. I see you were appointed under the Criminal Justice Act, and we appreciate your advocacy under that act. You raised a number of interesting issues and provided a great service to your clients, so we appreciate that. Thank you. The case will be submitted. Please call the next case.